Hayden v. Grillo.

DAVID J. HAYDEN *et al.*, Respondents, v. ANTONIO GRILLO, Appellant.

**St. Louis Court of Appeals, April 16, 1889.**

1. **Commissions:** SALE OF REAL ESTATE. The contract of a real-estate broker, who undertakes to sell the land of another for a commission, requires him to find a purchaser ready and able to make the purchase, or to respond in damages in the event of failure to perform his undertaking—to procure from and tender to the owner a valid written contract containing the terms of the sale, which the owner may enforce by law, if necessary ; or else to produce such a purchaser to the owner, ready and able to complete the contract, if the vendor will make the conveyance. These conditions being fulfilled, and not otherwise, the broker may compel the payment of his commissions by the owner, even though the sale be not eventually perfected. The owner may, however, to the like effect, waive the performance of such conditions on the part of the broker, by an absolute refusal to complete the contract, when advised by the broker that a purchaser has been found.

2. **Commissions:** SALE OF REAL ESTATE. If a real-estate broker, having bargained for the sale of his principal's land, refuse to inform him who is the proposed purchaser, the owner may rightfully assume that the broker is himself speculating in the property of his principal, and may refuse to close the transaction, without being liable to the broker for his commissions.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

REVERSED AND REMANDED.

*Edmond A. B. Garesché,* for the appellant.

An agreement on the part of a real-estate broker to make a sale is not fulfilled by merely finding a purchaser able and willing to buy. He must do more. He must

put his principal in a position to enforce the contract of purchase, and to that end nothing short of an agreement in writing signed by the purchaser will entitle the broker to recover, should the principal refuse to consummate the sale. R. S. 1879, sec. 2513; *Drury v. Newman*, 99 Mass. 256; *Hyams v. Miller*, 71 Ga. 618; *Rice v. Mayo*, 107 Mass. 550; *Veazie v. Parker*, 72 Maine, 443; *Barnord v. Mannot*, 34 Barb. 90; *Reiger v. Bigger*, 29 Mo. App. 428; *Collins v. Fowler*, 8 Mo. App. 588; *Love v. Miller*, 53 Ind. 300; *Glentworth v. Luther*, 21 Barb. 145; *Pierce v. Powell*, 57 Ill. 324; *Kimberly v. Henderson*, 29 Md. 515; *Richards v. Jackson*, 31 Md. 252; *Powers v. Kane*, 5 Wis. 265; *DeSantos v. Taney*, 13 La. Ann. 151; *Stillman v. Mitchell*, 2 Robertson (N. Y.) 523; *Ramsey v. West*, 31 Mo. App. 677. An agent cannot act for two principals, in the same transaction when their interests conflict. And where a real estate agent in the purchase and sale of land undertakes, unknown to either vendor or vendee, to act for both parties, no commission can be recovered from the party ignorant of the fact. *Watkins v. Courall*, 1 E. D. Smith, 65; *Dunlap v. Richards*, 2 E. D. Smith, 181; *Vanderpool v. Kearns*, 2 E. D. Smith, 170; *Meyer v. Hanchett*, 39 Wis. 419; *Wright v. Dannah*, 2 Camp. 203; *Fairbrother v. Simmons*, 5 B. and Ald. 333; *Pugsley v. Murry*, 4 E. D. Smith, 245; *Farnsworth v. Hemmer*, 1 Allen, 494; *DeSteiger v. Hollington*, 17 Mo. App. 388; *Walker v. Osgood*, 98 Mass. 348; *Everheart v. Searle*, 71 Pa. St. 256; *Raisen v. Clark*, 41 Md. 158; *Schwartz v. Yearley*, 31 Md. 270; *Morrison v. Thompson*, 10 Eng. Rep. 129; *Rice v. Wood*, 113 Mass. 133; *Lynch v. Fallon*, 11 L. R. 311; *Scribner v. Collar*, 40 Mich. 375; *Harrington v. Dock Co.*, 39 L. S. R. (N. S.) 20; *Lloyd v. Calston*, 5 Birch. 587; *Kerfoot v. Hyman*, 52 Ill. 512; *Stanback v. Read*, 11 Gratt. 281.

*Christian & Wind*, for the respondents.

The point raised by appellant here was presented to this court on his previous appeal, and by this court decided adversely to him. It is hardly worth while to reargue the question now. Besides, if any case cited in appellant's brief sustains his view, that under the facts in this case plaintiffs cannot recover because no formal written contract was made between Grillo and Griffin, we have not discovered it. There is absolutely no testimony that plaintiffs acted for Griffin as his agent in the transaction. When the case was here before, the court ruled that the fact that plaintiffs were the agents of the purchaser in other matters did not constitute them Griffin's agent in this transaction, and it is difficult to an unbiased mind to reach any other conclusion. The instructions given by the court presented fairly to the jury every issue raised by the pleading, and was approved by, this court on the previous appeal. The instructions asked by defendant and refused by the court contained declarations that were not law, presented questions not arising out of any evidence, contained very strong comments on evidence, and, so far as they were proper, were contained in instructions already given. It is idle for appellant to contend that Grillo has never refused to consummate. His only pretext is that no one ever appeared before him and tendered fifteen thousand dollars cash and demanded a deed of conveyance. The testimony of Hayden and Grillo establish the fact that he refused to sell beyond controversy, and the law does not require the doing of so useless an act as a tender of the consideration and demand of deed. That was something the brokers are not called on to do, and surely Grillo cannot escape liability because a purchaser whom he refuses to recognize does not put himself in a position to demand specific performance, or damages for non-performance?

BIGGS, J., delivered the opinion of the court.

This case has been before this court before, and is reported in the 26 Mo. App. 290. The judgment on that appeal was reversed and the cause remanded, because of a failure on the part of the plaintiffs to allege in their petition that they had secured a purchaser (naming him), who was *ready* and *able* to complete the purchase upon the terms offered by defendant for certain property in the city of St. Louis.

Plaintiffs are real-estate agents in the city of St. Louis and brought this suit to recover commissions for the sale of a lot belonging to defendant and situated on Olive street.

The plaintiffs amended their petition upon the second trial and alleged therein that on the —— day of ——, 1886, they procured a purchaser for defendant's property, viz., John S. Griffin, who was *ready*, *able* and *willing* to buy said property for the sum of fifteen thousand dollars cash, and paid one hundred dollars, cash as earnest money to bind the bargain.

Defendant filed an answer making a general denial. He also alleged "that no memorandum of plaintiffs' agreement for, and on behalf of defendant with the said John S. Griffin, signed by the said John S. Griffin, was ever obtained by plaintiff or presented to defendant at any time prior to the institution of this suit."

This portion of defendant's answer was, on motion of plaintiffs' counsel, stricken out, to which defendant objected and excepted, and he also urged this alleged error of the court as a ground for new trial.

There was a trial by jury, which resulted in a verdict for plaintiffs, from which defendant has prosecuted this appeal.

The defendant complains chiefly of the action of the court in striking out that portion of his answer above referred to and also to the giving of plaintiffs'

instruction, and the refusal of instructions asked by defendant.

The theory on which plaintiffs tried the case, and which was adopted by the court, was that, if defendant had employed plaintiffs to sell his property for the sum of fifteen thousand dollars cash, and that plaintiffs found a purchaser who was ready, willing and able to complete the purchase, and communicated this fact to defendant, and that defendant refused to consummate the sale, then defendant was liable to pay plaintiffs the amount of their commissions; and that it was not necessary for plaintiffs to communicate the name of the purchaser to defendant or bring defendant and the prospective purchaser together, for the purpose of consummating the purchase, nor was it necessary that there should be any written contract of sale by which the purchaser was legally bound to take the property.

On the other hand, defendant contends, that before defendant could be held liable to plaintiffs for commissions, there should have been either a valid written contract with the purchaser, Griffin, by which he could have been compelled to take the property or answer to defendant in damages for a failure to so do, or that it was the duty of plaintiffs to produce Griffin to defendant, with an offer on part of Griffin to complete the purchase by the payment of the money. Plaintiffs' evidence tended to show that plaintiffs had been employed by defendant to effect a sale of the property for fifteen thousand dollars cash; that on, or about, the eighteenth day of February, eighteen hundred and eighty-six, plaintiffs bargained the property to one John S. Griffin of the city of St. Louis. That Griffin authorized plaintiffs, who were his agents for the collection of rents, to pay out of the money in their hands and belonging to him, the sum of one hundred dollars earnest money. That in pursuance of this, the plaintiff, D. J. Hayden, on the eighteenth day of

February, 1886, told defendant that he had found a purchaser for the property and presented the following receipt to be signed by the defendant, to-wit: "Received of D. J. Hayden, the sum of one hundred dollars, as earnest money on purchase of my property on northeast corner of Sixteenth and Olive streets, the total purchase money to be fifteen thousand dollars cash. The sale to be completed so soon as title is examined and found correct and deeds made out.

"When Hayden presented this receipt defendant expressed an unwillingness to sell the property for the amount named, and contended that the property was enhanced in value since he gave plaintiffs the price (about fifteen or eighteen months before), but asked plaintiff, Hayden, to leave the receipt with him for a few days. That he wished to consider the matter, and also submit the receipt to some one in whom he had confidence, as defendant could not read English. The receipt was left with defendant, and Hayden promised to call again in a few days. Hayden failed to inform defendant to whom he had bargained the property, and failed to call on defendant again for his final answer touching the same.

It is admitted that no written contract was entered into between Griffin and plaintiff, by which the former could have been compelled to take the property, or answer in damages for a failure or refusal to do so. Nor is it pretended that Griffin ever asked defendant to complete the sale, but on the contrary, Griffin testifies that he knew that defendant owned the property, and he also knew defendant's place of business, and that he did not go to see defendant about the business, because he trusted to plaintiffs, who were *his agents*, to complete the purchase.

After Griffin had heard from some source (which is not disclosed by the testimony), that defendant was not *inclined* to *let* the property go for fifteen thousand dollars, he wrote plaintiffs the following letter:

"St. Louis, Feb'y 24, 1886.

"*Gentlemen:*

"This is to notify you that on the seventeenth of this month, I purchased through you, twenty-five feet, more or less, of ground on Olive street by a depth of one hundred and six feet, more or less, northwardly, and said to be the property of Antonio Grillo. You received on account of the purchase money one hundred dollars, the receipt of which I hold. I am surprised that the papers have not been made out before now, as I am ready to pay you the amount of purchase in cash. Is there any cloud over the title? If not, why this delay? I need hardly remind you that I have bought the property, from the fact that I hold your receipt for one hundred dollars on account. Close the matter up right away, and save yourself trouble and expense.

"Respectfully,

"John S. Griffin."

Plaintiffs admit that they received this letter and they also *admit that they failed to say anything to defendant about the letter.* A short time afterwards, plaintiffs sent their attorney to make a demand of defendant for their commissions, which defendant refused to pay.

The instructions asked by plaintiffs and given by the court embodied plaintiffs' view of the law in the case as above set forth, and defendant's instructions which were refused by the court presented his theory of the case.

There has been in this state, and in fact in all of the states, a great deal of litigation growing out of controversies between real-estate agents and the owners of property, concerning the payment of commissions. This results from the very loose manner by which the business is usually conducted. Now, what does a real-estate broker contract to do? He agrees to effect a *valid sale* of the property for a stipulated price, and in

consideration of this, the owner agrees to pay him a certain per cent. of the purchase money as commissions for his trouble. This contract, on the part of the broker, is complete, when he delivers or tenders to the owner a valid written contract, containing the terms of sale agreed on, signed by a party able to comply therewith, or to answer in damages if he should fail to perform. This is all the agent can do, and when it is done he is entitled to his commissions. But the necessity of a written contract of sale may be rendered unnecessary if the agent bring the vendor and vendee together, and the latter is able and willing, and offers to complete the contract, provided the vendor will make the conveyance. In such a case the agent has done all that he can do, and if the vendor under such circumstances refused to complete the sale he nevertheless will be compelled to pay the agent his commissions. *Love v. Owens*, 31 Mo. App. 501 ; *Ramsey v. West*, 31 Mo. App. 676 ; *Hayden v. Grillo*, 26 Mo. App. 289 ; *Collins v. Fowler*, 8 Mo. App. 588 ; *Stillman v. Mitchel*, 2 Robertson (N. Y.) 523 ; *Love v. Miller*, 53 Ind. 300 ; *Moses v. Bierling*, 31 N. Y. 464 ; *Phelan v. Gardner*, 43 Cal. 310 ; *Hyams v. Miller*, 71 Ga. 618 ; *McGavock v. Woodlief*, 20 How. 226 ; *Barnard v. Monnot*, 34 Barb. (N. Y.) 90 ; *Bailey v. Chapman*, 41 Mo. 536 ; *Carpenter v. Rynders*, 52 Mo. 281.

It is not sufficient, as in this case, that the broker has secured a purchaser whose name even he conceals from the owner of the property. The reason of the foregoing rule is very apparent. The object of the vendor is to effect a sale of his property and when the real-estate broker produces a contract executed by a solvent purchaser, he is then entitled to pay for his services, whether the trade is finally consummated or not, because, if the vendee refuses to take the property, the vendor holds the contract, which renders the former liable for all damages ( including commissions paid by

the vendor to the broker) for a failure to comply. On the other hand, if the broker produces to the vendor, a purchaser who is financially able to buy, and proffers to comply with the terms of sale, and the vendor should refuse to convey, upon all principles of fair dealing, the broker is entitled to receive his reward. If a less rigid rule than this was adopted, the door would be opened wide for all sorts of fraudulent practices by real-estate agents.

In the case at bar, the sale may have been made to Griffin in good faith, but the plaintiffs did not do all · that they could do, or that the law required them to do. It would have been quite easy for plaintiffs to have required Griffin to enter into a written contract that would have obliged him to take the property, or plaintiffs could, without trouble, have gotten the parties together and let them close up the trade, they both living in the city of St. Louis.

Judge THOMPSON, in delivering the opinion of the court in this case (26 Mo. App. at page 293), said: "The general rule unquestionably is, that before a real-estate broker can recover his commissions, he must show not merely that he *produced* one who offered to purchase the property on the terms agreed upon with his principal, but that he *produced* one who was both *ready* and *able* to purchase it upon such terms."

The purchaser himself, or his written contract, must be produced, because the law does not require the vendor to rely on the word of the broker. In many cases there would be no certainty in this for the owner, and certainty in the offer to fulfill is very important to the vendor, and absolutely necessary before he can be put in default.

But these conditions may be waived by the owner of the property, by an unqualified and absolute refusal to complete the contract, when advised by the broker that a purchaser has been found. Because the law

would not require the broker to go to the trouble of obtaining a written contract or of producing the purchaser when the owner refuses to sell, for other reasons. The evidence in th is case presents this view, and while this theory of the case was not squarely presented to the jury by the instructions, yet we are not disposed to disturb the judgment on that account; yet it would have been more satisfactory if the question of waiver had been directly presented by appropriate instructions.

The defendant asked the court to instruct the jury as follows:

" The court instructs the jury that, if you believe and find from the evidence in this case, that the defendant employed plaintiffs to negotiate for him a sale of the property owned by him at Sixteenth and Olive streets, in the city of St. Louis, and that they thereafter procured for him a purchaser therefor who was able and willing to purchase it for the price asked by defendant, i. e., fifteen thousand dollars cash, and that thereafter, and without disclosing to defendant the name of the purchaser, plaintiffs, or either of them, offered defendant one hundred dollars in cash and a receipt which they, or either of them, requested him to sign, and which receipt recited the fact that the money so tendered was received from the firm of D. J. Hayden & Co., plaintiffs in this case; then if you further believe and find, from the evidence, that defendant refused to accept said money, or to complete said sale, because he supposed that the said firm of D. J. Hayden & Co. the plaintiffs, in this case, were the purchasers of said property, then the court instructs you that, under the law, it was defendant's privilege to do so, and there can be no recovery by plaintiffs in this case, and your verdict should be for defendant."

The court refused this instruction and the defendant excepted.

We are of the opinion that the court committed error in refusing this instruction and that this error was prejudicial to defendant. There was evidence in the case on which to predicate the instruction. Plaintiffs admit that they failed to disclose the name of the purchaser to defendant, and the receipt which was offered to defendant for his signature, was in favor of D. J. Hayden, one of the plaintiffs. Defendant, in his testimony, said that he told D. J. Hayden that he did not want him to speculate on his property. If, as contended by plaintiffs, they were the agents of defendant to sell his property, they cannot put defendant in the attitude of refusing to complete the purchase, so as to entitle them to their commissions, when, by their conduct, defendant had reasonable grounds to believe, and did believe, that his own agents were speculating on his property, and were about to become its owners. Common justice and honesty demand that there should be no concealment by the agent toward his principal, and in the case at bar, while the intentions of plaintiffs may have been of the very best, yet their conduct was such as to arouse defendant's suspicions that he was not represented in that trade by any one ; and we think it is unfair that he should be put in default if he placed his refusal to complete the sale on the ground that he supposed that plaintiffs were the purchasers.

For this reason the judgment will be reversed and the cause remanded. All the judges concur.