RICHARD A. LOVE *et al.*, Respondents, v. JOHN H. OWENS *et al.*, Appellants.

Kansas City Court of Appeals, June 13, 1888.

1. REAL ESTATE BROKER — COMMISSIONS — WHAT NECESSARY TO ENTITLE TO.—In order to entitle a real estate broker to commissions, for the sale of property intrusted to him, he must complete the sale; that is, he must find a purchaser in a situation and ready and willing to complete the purchase on the terms agreed on. Then he will be entitled to them, although the vendor should refuse to go on and perfect the sale; or the vendee should so refuse, if the sale is by a valid and binding contract between vendor and vendee, without any fault on the part of the vendor.

2. ———— ———— CUSTOM AMONG BROKERS AS TO AN ABANDONED SALE —CASE ADJUDGED.—Even if such a custom, as that the broker would not claim commissions in the case of a sale which failed from no fault of the seller, would constitute a defence in such a case as this, the evidence failed to establish any such custom here.

Appeal from Jackson Circuit Court, Hon. Turner A. Gill, Judge.

*Affirmed.*

Statement of case by the court.

This is an action to recover a broker's commission for selling land. The contract of employment is as follows :

"Independence, Mo., February 3, 1887.

"We hereby appoint Love & Lobb my agents to sell or trade the following property, to-wit (description of property) : All of the Pendleton tract in Independence, Mo., at and for the sum of $42,500 ; and I agree to give my said agents 2½ per cent. commission cash, on the sale thereof.

"Terms : $12,000 cash. .     W. H. Colvert.
                             "J. H. Owens."

The plaintiffs procured such purchaser in the person of John B. Stone, who was brought by plaintiffs to defendants, and a contract was accordingly entered into, in writing, between defendants and Stone, whereby defendants sold the property to Stone at the price of forty-two thousand, five hundred dollars, of which twelve thousand dollars was to be paid in cash, that is, one thousand dollars to be paid at signing of contract and eleven thousand dollars when deed to said property was delivered on satisfactory evidence of title ; and the balance to be paid as follows : eight thousand dollars in one year, with interest at the rate of eight per cent. and the purchaser to assume the payment of three notes amounting to twenty-two thousand dollars, then a lien on said property.

The evidence showed that defendants were ready and willing to complete said contract of sale at all times, but the said Stone had refused or failed to keep the same, further than to make the cash payment of one

thousand dollars, which defendants received, and yet hold. The evidence also showed that said Stone was solvent and able to perform said contract, and that defendants never took any steps to compel Stone to perform the whole of the contract on his part; and that before the trial of this cause below the defendants had conveyed the property to other parties.

There was some evidence in the case by which defendants sought to show that there was a custom among real estate agents in Kansas City to the effect that where the sale fell through without any fault on the part of the seller no commissions were expected by the agent. This is sufficiently noticed in the opinion of the court.

The case was submitted to the court without the intervention of a jury and the following finding of facts and declaration of law sufficiently indicate the theory on which the court tried the case:

"The court finds the facts in this case to be that defendants agreed with plaintiffs by the contract read in evidence that if the plaintiffs would procure a purchaser for the real estate described in the petition; that for such services the defendants would pay two and one-half per cent. of the selling price. Plaintiffs by their own efforts did secure the purchaser John B. Stone, who entered into the contract which defendants read in evidence, for the purchase of said real estate defendants were ready and willing to make their deeds to said real estate to said Stone, but said Stone, without any reasonable cause or excuse, and without the fault of defendants, and after having made said contract, did refuse to carry out the same and refused to pay the balance of the purchase money, but violated his contract and declared the same off. Defendants have retained and still have the one thousand dollars cash paid by said Stone and hold the same as forfeited. Stone was all the time and is now fully able to answer in damages for violation of said contract, and besides defendants have ample remedy for specific performance as against said purchaser Stone.

The plaintiffs sold the real estate for forty-two thousand, five hundred dollars, and they are entitled to recover their two and one-half per cent. on this sum, to-wit, $1,062.50, with six per cent. interest from the institution of this suit."

The court found the issues for plaintiffs. From this judgment defendants have appealed.

DANIEL B. HOLMES and BOTSFORD & WILLIAMS, for the appellants.

I. By the written contract between plaintiffs and defendants, plaintiffs only became entitled to their commissions when they sold or traded defendants' property on the terms therein mentioned, to a person ready, able, and·willing to purchase said property on said terms. Plaintiffs having failed to sell said property on these terms, agreed upon between themselves and defendants, are not entitled to their commissions, and the court erred in refusing the instruction asked by defendants, that, on the pleading and evidence, the finding and judgment should be for defendants. *Reiger v. Bigger*, 29 Mo. App. 421 ; *McArthur v. Slauson*, 53 Wis. 41.

II. The execution of the written contract for the sale of said property by appellants to the person produced by respondents for the purchase thereof on the terms contained in said written contract, and the acceptance by appellants of the one thousand dollars cash paid thereon did not operate as an acceptance by appellants of such contract, and payment as performance, or as a waiver of performance by respondents of their agreement to sell said property on the terms of twelve thousand dollars cash payment thereon. *Reiger v. Bigger, supra.*

III. The engagement of respondents, under their written contract of employment by appellants, as their agents, was to sell or trade the property of appellants, and respondents were only entitled to commissions as

such agents on an actual sale thereof on the terms proposed in their contract of employment. They must produce a person who not only enters into an agreement to purchase on the terms mentioned in said contract of employment but who actually purchases, by complying with the terms of such agreement, or who is ready, able, and willing to consummate the agreement by complying with its terms on his part. And, as such person so produced by respondents, without the fault of appellants, failed and refused to take the property, pay the amount of the purchase money mentioned in said contract of employment, and execute the securities agreed upon in the contract for the purchase and sale of said property, appellants being always ready, able, and willing to complete the agreement, on their part, on such compliance by the person so produced by respondents, respondents have failed to comply with the terms of their employment by appellants, and the judgment in their favor should be reversed. *Hayden v. Grillo*, 26 Mo. App. 289, and cases cited; *Reiger v. Bigger*, 29 Mo. App. 421; *Budd v. Zoller*, 52 Mo. 238; *McGavock v. Woodlief*, 20 How. [U. S.] 221; *Richards v. Jackson*, 31 Md. 250; *Kimberly v. Henderson*, 20 Md. 512. The case last cited has been approved by the Supreme Court of Missouri, in *Woods v. Stephens*, 46 Mo. 55, and the Kansas City Court of Appeals in *Reiger v. Bigger, supra*. *Hyans v. Miller*, 71 Ga. 698; *Hinds v. Henry*, 26 N. J. Law, 328; *Kerfoote v. Steele*, 113 Ill. 610.

IV. Proof having been made of a general custom among real estate dealers that commissions are not claimed or paid by the seller where the purchaser refuses to carry out the contract, without the fault of the seller, such custom entered into the contract between plaintiffs and defendants, and defendants' instruction to that effect should have been given. *Hinds v. Henry, supra; Kock v. Emmerling*, 22 How. [U. S.] 69.

GATES & WALLACE and J. MACK PEACOCK, for the respondents.

I.   If a real estate agent has authority to sell for "cash," an agreement procured by him, in which it is provided that the "cash" shall be paid on a delivery of a deed to the property, is in substantial conformity with the agent's authority to sell. *Smith v. Allen*, 86 Mo. 178, 190; *Gross v. Brown*, 31 Minn. 484. There is, therefore, no difference in this respect between the expression "Terms, $12,000 cash" in the defendants' contract with plaintiffs, of February 3, 1887, and the contract defendants made with the purchaser Stone, the next day, February 4, in which they acknowledge the receipt of one thousand dollars, and state that, "eleven thousand dollars cash upon the delivery of warranty deed."

II.   If an agent procures a purchaser who is ready, able and willing to enter into a contract to take the property on the terms on which the agent is authorized to sell the same and the principal himself modifies or changes the terms, the agent is entitled in a suit on his contract to recover his commissions. *Woods v. Stephens*, 46 Mo. 555; *Beauchamp v. Higgins*, 20 Mo. App. 514; *Nessbitt v. Hellser*, 49 Mo. 383. We claim that there is no difference between the terms on which the plaintiffs, Love and Lobb, were authorized to sell defendants' property, and the contract of sale entered into by defendants and the purchaser Stone; but even if there is any difference, it clearly appears that the contract of sale, as executed, was in accordance with the terms desired and required by the defendants, Owens and Colvert, and with the assistance of their attorney; and the closing of the contract was postponed from February 3, to February 4, and from Independence to Kansas City, for the purpose of allowing defendants to consult their attorney.

III.   A real estate agent has earned his commissions, and is entitled to recover them when he has procured a purchaser who enters into a written contract

with the owner to purchase the property, provided the financial condition of the purchaser is such that the contract con be enforced by the owner against him, even although the purchaser refuses, after ;he has executed the contract, to take the property. *Collins v. Fowler*, 8 Mo. App. 588; *Love v. Miller*, 53 Ind. 294; *Rice v. Mayo*, 107 Mass. 550; *Veazie v. Parker*, 72 Me. 443; *Leete v. Norton*, 43 Conn. 219; *Gross v. Broom*, 31 Minn. 484; *Gross v. Stevens*, 32 Minn. 472; *Coleman's Ex'r v. Meade*, 13 Bush ( Ky. ) 358; *Keys v. Johnson*, 68 Pa. St. 42; *Reynolds v. Tomkins*, 23 W. Va. 229, 235; *Potvin v. Curran*, 13 Neb. 303; *Finnerty v. Fritz*, 5 Col. 174; *Watson v. Brooks*, 8 Sawyer ( U. S. C. C. ) 316; *Simonson v. Kissick*, 4 Daly ( N. Y. ) 143; *Duclose v. Cunningham*, 102 N. Y. 678; *Middleton v. Findla*, 25 Cal. 79; *Gonzales v. Brood*, 57 Cal. 224; *McGrary v. Green*, 38 Mich. 172; *Sheppard v. Hedden*, 5 Dutch. ( N. J. Law ) 345; *Harris v. Begner*, 9 Phil. 51; Fitch on Real Estate Agency, 123; Wharton on Agency, sec. 328; *Bailey v. Chapman*, 41 Mo. 538; *Carpenter v. Rynders*, 52 Mo. 281. This rule is also recognized in Illinois and New Jersey in the two cases cited by defendants. *Kerfoot v. Steele*, 113 Ill. 610; *Hinds v. Henry*, 36 N. J. Law, 328.

IV. A written contract for the purchase of land, binding both vendor and purchaser, is a sale within the meaning of an agreement to pay a commission to a broker upon sale of the land. It is not necessary that a deed shall have been executed and delivered. *Rice v. Mayo*, 107 Mass. 550; *Chapin v. Bridges*, 116 Mass. 105.

V. In order that a usage or custom may become a law of trade and be obligatory upon those contracting, in reference to matters to which it relates, it must be shown to be certain, uniform, reasonable and so generally known and of such long existence that the parties must be presumed to have known of, and contracted with reference to it, or it must be shown that the parties actually knew of its existence. Clarke's Brown on Usages

and Customs, 158 ; *Martin v. Hall*, 26 Mo. 386 ; *Walsh
v. Transp. Co.*, 52 Mo. 434 ; *Ober v. Carson*, 62 Mo. 290 ;
*Cooke v. Fiske*, 12 Gray, 491.

VI. A usage or custom is not admissible to contra-
dict or vary the terms  or  the legal import of a contract
or a settled rule of  law.   It cannot make the rights and
liabilities of  the parties to a contract other than they are
at law.    Clarke's  Brown  on  Usages  and  Customs, 82 ;
*Ober  v.  Carson*, 62 Mo. 214 ;  *Cotton  Press  Co.  v.  Stan-
ard*, 44  Mo.  71.   Here  the  express  agreement  was  to
pay a commission on a sale of  the property.    If the law
determined what constitutes a performance of  the ser-
vice by the broker, so as  to  entitle  him  to his commis-
sions, then the custom, if  one existed, cannot have any
effect.

PHILIPS, P. J.—The principal contention of appel-
lants is, that notwithstanding  the  agent  may  procure a
purchaser, ready and willing to enter  into  a  contract to
take the property on the terms proposed, or  such  as  is
agreeable to the seller, and the agent bring the seller
and the purchaser together, who then enter into a writ-
ten contract, executed by them, as in this case, yet if
the  purchaser afterward fail to come up and perform
the contract, without any fault on the part of  the seller,
then  the  agent  is  not  entitled  to  his  commission,
although the purchaser be perfectly solvent and able to
perform.

As this position was contrary to our understanding
of  the rule in this jurisdiction,  we have examined with
much interest the authorities cited by counsel in sup-
port of his contention.    The case of *Budd v. Zoller*, 52
Mo. 238, does not go so far.    It  was  merely  held, that
where B proposed to A to effect for him a loan of money,
to be secured by a deed of trust on A's land, for a cer-
tain commission ; and at the  time  A  delivered to B his
title papers for  his examination,  B  was not entitled to
his  commission  where  the  lender  produced  by  him
refused  to  make  the  loan  on  account  of  defect  in  A's

title deeds. The majority of the court held, that under the circumstances it was the duty of the broker first to have satisfied himself by an examination of the papers turned over to him by A of the sufficiency of the title. But the court were all agreed, that if A had employed B to effect a loan for him, to be secured by deed of trust on A's land, without more, and after B had produced the party ready to make the loan, and the contract had fallen through on account of defects in A's title, the agent would have been entitled to his commission, as he had done all his employment contemplated.

In *Carpenter v. Rynders*, 52 Mo. 281, the court say : "The plaintiff ( the agent ) had undertaken to sell defendant's lot for a commission ; he negotiated a sale, which was satisfactory to the defendant. The defendant must of necessity make the deed and convey the lot." Although the failure there resulted from the default of the seller in making the deed, yet the language of the court indicates what is meant by a sale, in such connection. It is the contract negotiated by the agent ; the deed to be made by the seller, of course, as that is a matter over which the agent has no control.

The case of *McGavock v. Woodlief*, 20 How. ( U. S.) 221, fails to sustain appellants. The negotiation fell through because the purchaser, produced by the agent, offered certain substitution of securities, which were not acceptable to the vendor. The seller did not, as here, accept the proposition of the buyer, and enter into a written contract, satisfactory to all concerned. And the opinion of Mr. Justice Nelson concludes with the distinct announcement, that, "The broker must complete the sale ; that is, he must find a purchaser in a situation and ready and willing to complete the purchase on the terms agreed on, before he is entitled to his commissions. Then will he be entitled to them, though the vendor refuse to go on and perfect the sale."

The cases of *Kimberly v. Henderson*, 29 Md. 512, and *Richards v. Jackson*, 31 Md. 252, assert the broad

proposition, that it is not sufficient for the agent to procure a purchaser who should enter into an agreement to purchase, but he must actually purchase, by complying with terms agreed upon, unless his failure to do so is occasioned by the fault of the vendor.

So far as we are able to discover, the Maryland cases stand alone, if their holding is to apply to the facts of this case. The prevalent rule is, that where the broker, pursuant to his employment, produces a purchaser who is willing and ready to take the property on the terms acceptable to the seller, and the seller enters into a written contract with him expressing the terms of the sale, and the seller is solvent and able to perform, the broker then becomes entitled to his commission, although the vendee afterward refuses to perform, without any fault on the part of the vendor. *Love v. Miller*, 53 Ind. 294; *Rice v. Mayo*, 107 Mass. 550; *Veazie v. Parker*, 72 Me. 443; *Goss v. Stevens*, 32 Minn. 472; *Coleman v. Meade*, 13 Bush [Ky.] 358; *Keyes v. Johnson*, 68 Pa. St. 42; *Duclose v. Kissick*, 102 N. Y. 678; *Knapp v. Wallace*, 41 N. Y. 477; *Gonzales v. Brood*, 57 Cal. 224; *McCrary v. Green*, 38 Mich. 184, 185; *Sheperd v. Hedden*, 5 Dutch. [N. J. L.] 345; *Kerfoot v. Steele*, 113 Ill. 610.

This was directly held in *Collins v. Fowler*, 8 Mo. App. 588. And the language of our courts has been that whenever the agent procures a purchaser ready, willing, and able, and he is accepted by the vendor, the agent is entitled to his reward. *Nesbit v. Helser*, 49 Mo. 383, 385; *Woods v. Stephens*, 46 Mo. 556, 557; *Beauchamp v. Higgins*, 20 Mo. App. 514; *Hayden v. Grillo*, 26 Mo. App. 293.

In this case, the agents did procure the purchaser, who was willing to take the property on the terms acceptable to the vendors. The purchaser, when presented by the broker, was accepted by the vendors, and they entered into a written contract with him at the price agreed upon between the principal and broker. It is conceded that Stone was solvent, and that he could

have been made, by resort to the courts, to perform the contract. What more could the agent do?

The defendants, by accepting the purchaser and entering into a written contract with him, put it out of the power of the agents to bring action against Stone on the contract, as they might have done had the contract been made in their name. As the agents could not make the deed, there was nothing more they could do. It does seem to me that it would be an unreasonable construction of the contract between the plaintiffs and defendants to hold that it was the intendment that the agents to be entitled to their commission should go a step farther, and have the purchaser perform the written contract, to which plaintiffs are not parties, and over which they have no control.

The defendants not only accepted the purchaser, but received one thousand dollars of the purchase money; which they yet hold as forfeited under the contract; and also held a contract for the residue of the purchase money, which they could have specifically enforced. To permit the seller to escape his liability to the agent, merely because he is willing to let the purchaser go rather than bring a suit on the valid contract, would be to encourage injustice and open up the way for the purchaser and vendor to get off, merely by the one failing to comply voluntarily with his written compact, and the other to enforce it, the one forfeiting merely his first payment, and the other pocketing it, leaving the agent without redress for the wrong done him.

II. There was evidence offered at the trial by appellants for the purpose of establishing the existence of a custom among real estate agents in and about Kansas City not to expect or demand any commission where the purchaser failed to come up to his contract. It is unnecessary in this case to recur to the rules of law requisite to the establishment of such custom *in pais*. A careful reading of the evidence offered in this case satisfies us that the trial court properly disregarded this

issue. It failed to establish any such custom. The state of case in the minds of the witnesses was manifestly not such as the one at bar ; and the fact that one person would say that the owner of property, rather than insist upon the performance of a valid contract with a solvent vendee, would let the contract go, could hardly tend to establish the existence of a custom that would destroy the agent's claim for commission under circumstances like these disclosed in this record.

The other judges concurring, the judgment of the circuit court is affirmed.